## Warfield Natural Gas Co. v. Hall.

(Decided March 23, 1934.)

(As Modified on Denial of Rehearing June 26, 1934.)

.806

DYSARD, TINSLEY & PRICHARD for appellant.
JOHN T. DIEDERICH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Margaret Hall, is the wife of George Hall, and they occupy a residence owned by the husband in Ashland, Ky. The appellant and defendant below, Warfield Natural Gas Company, is a corporation and operates a natural gas distributing plant in that city as the successor of the "United Fuel Gas Company" which latter first obtained the franchise. While it operated the plant, Geo. Hall signed a written application to become one of its patrons for the purpose of having gas installed in his residence. One of the conditions thereof was that "the authorized agents of the Company shall have the right to enter upon the premises of the consumer, to inspect the lines, furnaces and appliances, read or disconnect the meter, shut off the gas, inspect and test the flow or consummation of gas, and appliances therefor." That stipulation converted any authorized agent of that company (or of its successor, the defendant) who entered the Hall residence for any of the purposes enumerated from a trespasser into a licensee.

At about 3 o'clock on February 27, 1931, an author-- ized agent and servant of defendant called at the Hall residence to inspect the gas, plumbing, pipes, etc., in it, as well as the meters, for the purpose of discovering leakage, etc., and for other necessary information. The one who met him at the door was the plaintiff, Mrs. Hall, to whom he made known his purpose, and in- formed her that it would be necessary for him to turn off the gas for a short while in order to make the neces-- sary inspection. They each differ as to what then oc-- curred, she stating, in substance, that she objected be-- cause she had been suffering for three days with a cold, and which she concluded had developed into influenza, and for that reason she did not want the fires in the only three rooms in which they were burning (the kitchen, dining room, and bath) extinguished for any period of time. The agent turned off the gas and stated that she made no such objection, nor gave him any such information, and that she was garbed in the ordinary fashion of a housewife and was up and moving around in the house as if suffering with no ailment. About the time the agent commenced his inspection, and just be- fore turning off the gas, the son of Mrs. Hall appeared, having returned from school, and he followed the agent of defendant around through the house as the latter was doing his work, and he testified that all of the interior doors were closed by him as the two would leave one room and go into another.

Mrs. Hall stated that she had a thermometer in the house and that she usually kept the temperature at from 70 to 72 degrees and which she concludes was its meas- urement on the day mentioned; but she did not then examine the thermometer to ascertain that fact. She testified also that the gas remained turned off in her residence for thirty or thirty-five minutes, but she then examined no timepiece and her statement as to the length of time is necessarily only her opinion. The agent of defendant did examine his watch when he be- gan the inspection, and likewise did so when he ceased, and the fire was turned on, and which was done by him under a rule of his employment requiring him to make note of the time spent in the inspection of the plumb- ing of all customers of defendant. He, therefore, made a record of such facts at the time and which shows, and he so testified, that he completed the inspection within

fifteen minutes and that the fire was turned off in the residence of plaintiff no longer than that time.

Plaintiff further testified that later in the afternoon she felt chilled and during the night she was seized with a chill which developed the next day into lobar pneumonia, from which she recovered, and later filed this action against defendant in the Boyd circuit court to recover damages for the mental and physical pain and anguish she sustained by reason thereof, and for physicians' and medical bills that she incurred, which she fixed in her petition at the total sum of $5,000 for which amount she prayed judgment. The answer denied the averments of the petition and by amendment pleaded the written license already referred to. Following pleadings made the issues and upon trial, the jury, under the instructions submitted to it by the court, returned a verdict in favor of plaintiff for the sum of $582, for which judgment was rendered. Defendant's motion for a new trial was overruled and complaining thereof prosecutes this appeal.

Before considering the grounds argued for a reversal, it should be remembered that the crux of plaintiff's cause of action, if she has any, is not the fact that defendant's agent and servant entered her residence and turned off the gas since the writing, supra, gave it those rights, and, unless it wrongfully or negligently exercised them, plaintiff has no cause of complaint. Such wrongful exercise arises when the privileges conferred were unnecessary for the preservation and maintenance of the internal plumbing equipment to enable defendant to furnish the service, and the occupants of the house to receive it; while a negligent exercise might arise when there was no immediate emergency for turning off the gas, and the servant who did it possessed knowledge of such facts as would lead an ordinarily prudent person to believe that to do so would produce injury and damage to an occupant of the house (in this case plaintiff) as a proximate result of his act. So considered, it is extremely doubtful whether plaintiff's pleading, or her proof, were either of them sufficient to authorize a submission of her case to the jury; but, since those questions are not argued in brief, we will treat the case, for the purposes of this opinion only, as if the pleading was not so shrouded.

A number of grounds are contained in the motion

for a new trial which defendant claims are prejudicially erroneous, but the ones pressed upon us in briefs are: (1) That the court erred in overruling defendant's motion for a peremptory instruction in its favor; (2) if mistaken in ground (1), then the verdict is flagrantly against the evidence, and (3) error in giving and refusing instructions, each of which will be determined during the course of the opinion, but since grounds (1) and (2) relate exclusively to the sufficiency of the evidence introduced, they will be considered together.

1-2. The only testimony in the case that could possibly authorize a submission of the case to the jury was that given by Dr. Hall, and whose professional services rendered to plaintiff began, not when she contracted her cold three days before the occurrence complained of, but after her ailment developed into pneumonia and at about 9 a. m. on the day following the alleged tort. He knew nothing of her condition prior to that time, except that which plaintiff gave him in detailing the history of her case. In a long hypothetical question propounded to him by plaintiff's counsel (and in which some of the undisputed facts of the case were not incorporated, and also in which other facts were included which were stoutly contradicted) he was asked: "What in your judgment was the cause of the lobar pneumonia that you say she was afflicted with?" to which he answered: "I attributed it to the sudden change in the temperature and the cold that she got and this flu that she said she had." On cross-examination he stated that, under the facts detailed in the question, "there is a strong possibility" that the pneumonia was produced by turning off the gas by defendant's agent. He was then asked if it could not also have been produced as a natural result of the cold and influenza conditions described by plaintiff, and answered: "Oh sure, it might do that too, but from the condition that she told me she was in prior to this time, prior to getting so cold, why made it [turning out the gas] very likely the absolute cause." It will thus be perceived that the expert witness was compelled to admit, in substance, that the turning off of the gas was only a possible one of other probable causes that could have produced the pneumonia with which plaintiff became afflicted, but that he preferred to attribute it to the cause alleged in the petition. It should also be observed that even such opinion on his part was based on a "sudden change in the temp-

erature" and "this flu that she said she had," but which, so far as this record shows, may have been nothing more than an ordinary cold.

Dr. S. C. Smith testified only as an expert and was asked by plaintiff's counsel if a sudden lowering of temperature would cause pneumonia to one suffering with cold or influenza and answered in the affirmative. On cross-examination he, of course, stated, in substance, that other causes would produce it, but that he did not believe that turning off the gas for only fifteen minutes "would have any influence" toward producing pneumonia, but that its turning off for thirty-five minutes "might have some influence. It may have. One can't say positively." The testimony of those two witnesses constituted plaintff's entire proof upon the issue as to whether the pneumonia with which she was attacked was the proximate result of the shutting off of the gas by defendant's agent, whether it was for a period of only fifteen minutes or thirty minutes, and from which it will be seen that in no event could it have been produced if the fire had been out for only fifteen minutes and that such a consequence was only (though barely) possible if the time was as much as thirty minutes. Not even then was such a result possible except upon the hypothesis that there was produced thereby a considerable, as well as sudden, reduction in the inside temperature.

Defendant introduced as expert witnesses Drs. J. W. Stephenson, E. C. McGeehee, W. L. Gambill, and J. M. Salmon, all of whom substantially contradicted the possibility of pneumonia developing from the proven facts as submitted to them in a correctly propounded hypothetical question. Some, if not all of them, also stated that the chill or chilly sensation claimed to have been experienced by plaintiff shortly after the turning off of the gas was and could not have been a proximate result of that act; nor could the pneumonia with which plaintiff became afflicted have been produced in so short a time thereafter. It was also shown by those physicians (and which was a fact so universally known that perhaps we might take judicial knowledge of it) that influenza is frequently followed by pneumonia and, which is more likely to happen if the patient fails to take the requisite care to prevent it, the most effectual of which is for him to remain confined in bed, but which plaintiff had not done, nor was doing upon the occasion com-

plained of. On the contrary, she continued to move about her house and engage in performing at least some of her household duties.

Thus far we have viewed the testimony from the standpoint that there was both a sudden and material reduction of the temperature in plaintiff's residence, and that it was a "very cold day" as was assumed in the hypothetical question propounded to Dr. Hall, but the undisputed evidence proves that the temperature in the open and at the time when the gas was turned off was 53 degrees as shown by the government records kept by the local weather bureau in the city of Ashland, the reading of which was taken at a later hour on that day. There is nothing in the record, except the opinion of plaintiff, to prove what was the temperature before the gas was turned off, and the fires in her residence were extinguished. She assumes that it was as high as 70 or 72 degrees, because it was her custom to keep it so. Neither did she state how much or to what point the temperature was reduced because of the extinguishment of the fires. However, if it had been reduced to that which existed on the outside of the house, it could not have reached a point below 53 degrees, and the testimony makes it almost positively certain that it could not have been reduced to the same level as that which existed on the outside and in the open, since but few, if any, of the outside doors were opened by the defendant's agent, or that they were left open after passing through them. It is, therefore, reasonably clear that the temperature on the inside of plaintiff's residence was never reduced to that which existed on the outside of it.

In such circumstances we have experienced some difficulty in determining whether or not the testimony of Drs. Hall and Smith was sufficient to create the necessary scintilla so as to authorize a submission of the issue to the jury, especially in view of the prevailing rules with reference to the probative effect of (even expert) opinion evidence, as laid down and discussed in the case of Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. (2d) 731, and others referred to therein, and when such opinion is not necessarily supported by the facts proven in the case but is based on speculation or surmise of the witness rather than substantial and probative facts. But, notwithstanding our expressed doubt concerning that question, we are thoroughly convinced

that if it should be conceded that the testimony made a submittable case to the jury, its verdict was not supported thereby, and is flagrantly against it so as to authorize our sustaining ground (2) and reversing the judgment therefore without determining ground (1), which is expressly left open.

3. Under ground (3) it is argued by counsel for defendant that the court erred in giving to the jury instructions Nos. 1, 2, and 4, to which it objected, and also erred in refusing to give to the jury instructions (a) and (c) offered by it. The criticism of instruction No. 1 is the alleged error of the court in submitting to the jury therein the question as to whether the length of time that the gas was turned off lowered the temperature of the inside of plaintiff's residence sufficiently "for her to become chilled," and from which her pneumonia attack was the proximate result, the contention being that there was no direct testimony as to what would be a sufficient time for that purpose. However, there was submitted to the expert witness introduced for plaintiff the length of time as contended for by plaintiff and like witnesses introduced for defendant considered the time as testified to by its witnesses, and we conclude that the jury thereby possessed all the facts from which to determine the issue without the necessity of express testimony touching it.

Instruction No. 2 is criticized by counsel because allowing plaintiff to recover for the value of time lost by her and for the permanent impairment of her power to earn money, resulting from her pneumonia attack when she did not claim in any of her pleadings damages for any such items. This criticism is, of course, well taken and is conceded by plaintiff's counsel to be erroneous; but he argues that the smallness of the verdict sufficiently indicates that the jury allowed nothing for either of them, and that the error was therefore nonprejudicial. We will not attempt to determine that question, but in view of the fact that a new trial is ordered the court will eliminate from its instructions those items, unless plaintiff reforms her pleadings so as to authorize the submission.

The criticism directed to instruction No. 4 given by the court is, we conclude, also well taken. It says: "You are instructed that the defendant through its agent had the right to go upon plaintiff's premises and inspect the

gas pipes, meters and gas appliances in her dwelling house and to turn off the gas then and there for that purpose, unless objected to at the time by the plaintiff.'' That instruction, it will be perceived, authorized and empowered plaintiff to nullify the written license to make such entry by the merest arbitrary objection thereto, and which would render the license of no avail whatever to defendant. Such objection, to be available at all, should be based upon reasonable and sufficient grounds and made in terms and under circumstances reasonably calculated to convince the disregarding servant of the probable consequences of exercising the right over such informative objection of plaintiff. It is so conceded by her counsel, as we understand his brief, but he insists that instruction No. 1 (1) given by the court substantially submitted that theory and that instruction No. (4) should be read in connection therewith. But we do not so interpret instruction No. 1, and upon another trial the court will reform its instructions so as to embody the idea above advanced and will omit entirely instruction No. 4, and which, when done, will eliminate also defendant's complaint of the refusal of the court to give instruction (a) offered by it which was directed to the same point.

Instruction (c) offered by defendant, and which the court refused, was, in substance, a contributory negligence one, wherein the jury is told that if plaintiff's attack of pneumonia was the direct result of her failure to take the proper care of herself during the four days preceding the pneumonia development by retiring to bed and abstaining from exertions in looking after her household affairs, then the law was for defendant and the jury should so find. However, there was no such defense made by defendant, and in the instructions given the jury was informed that it could not return a verdict in favor of plaintiff, unless it believed that the turning off of the gas, as complained of, was the proximate cause of the pneumonia that followed. Perhaps, if such a plea had been made by defendant, the offered instruction (c) or its substance would have been proper. All questions not herein specifically discussed and determined are reserved.

Wherefore, for the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and for other proceedings not inconsistent with this opinion.